IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FLORENCE HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 00-PWG-1214-S |
| ) | |
| TOGO D. WEST, JR., Secretary of ) | |
| Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

FILED 02 SEP 17 PM 3: 31

ENTERED SEP 17 2002

## MEMORANDUM OF OPINION

Florence Henderson, plaintiff herein, filed this complaint against Togo D. West, Jr., Acting Secretary of the Department of Veteran Affairs Medical Center, alleging violations of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000, et. seq., and Title II of the Civil Rights Act.[1] The parties have consented to the magistrate judge's jurisdiction pursuant to 28 U.S.C. section 636(c)(1). The matter is before the magistrate judge on West's motion for summary judgment. (Document #24).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once

---

[1] Ms. Henderson's counts alleging violation of the Family Medical Leave Act and the tort of outrage were dismissed. (Documents #10 and #12).

that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the Ms. Henderson, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed or if disputed viewed in the light most favorable to Ms. Henderson, the nonmoving party. Ms. Henderson was employed by the Veteran's Administration Hospital ("VA") in March 1989. (Henderson depo., p. 5.) The VA follows a policy of maintaining a work environment free of discrimination and practices of discrimination. (Shamlin depo, pp. 10-11.)

The VA operated a shuttle service to transport patients, visitors, and employees between the main medical center building and the parking deck. The VA had a policy that patients and visitors

2

were to be given preference over VA employees and contractors in using the shuttle service. Larry Johnson, the Rule 30(b)(6) representative for the defendant testified:

> Q: Based on your understanding of the VA's shuttle policy that patients have priority for loading, if an employee has allowed all patients to load prior to them and then takes a seat on the bus, are they required to give up that seat?
>
> ...
>
> A: I don't require them to do that, nor would I.
>
> Q: Why wouldn't you?
>
> A: Well I feel that once the bus is loaded that, you know, an employee could be getting on and off all day long. If they are standing in line, it would be a different story. Once they are on there, no."

(Johnson depo, p. 11.)

On July 9, 1998, Ms. Henderson allowed three VA shuttle buses to come and go before she boarded. James Durham, a Supervisory General Engineer, was responsible for the general operation of the shuttle service. (Durham declaration.) On or before July 9, 1998, Durham received several complaints about employees and contractors working for the VA getting on the shuttle ahead of patients. *Id.* Durham went to the Eight Avenue South ramp at the main medical center building around 3:30 p.m. *Id.*

Durham singled out Ms. Henderson, the only African American female on the shuttle bus, and demanded that she give up her seat to a white male. (Henderson depo, p. 31, 48-49.) Ms. Henderson did not know if the white man she was asked to give up her seat to was an employee. (Henderson depo, p. 49). Durham and Marty Naugher both stated in their declarations that there were two men trying to board the full shuttle bus. Durham stated that the men appeared to be about 70 and 60 years of age and the younger man appeared to have had a stroke and had difficulty

3

walking. Durham did not identify the two men by race. Naugher identified the two men as patients one of whom was "Caucasian in appearance, while the other appeared to be of African descent." Naugher stated that the Caucasian patient was using crutches while the other patient was walking without assistance.

Durham boarded the full shuttle and asked that all VA employees get off the shuttle. Marty Naugher, a white male VA employee, gave up his seat and got off the shuttle. (Naugher declaration; Durham declaration; Ms. Henderson's deposition, p. 43, 80-84.) Ms. Henderson was wearing a white lab coat and VA name tag and remained seated. (Durham declaration; Defendant's Exhibit E, Ms. Henderson's Response to Defendant's Combined Discover, Request for Admission Number 4, p. 7. ) Durham then stood over Ms. Henderson and said "You are going to have to get off the bus." (Henderson depo, p. 31.)

Ms Henderson recalled the rest of the exchange as follows:

Q: Did he say anything else?

A: He said – yes, he did. He said, you are going to get off the bus. I didn't know who Mr. Durham was. I had never seen Mr. Durham before that day. Mr. Durham pointed at me and said, "You get off the bus." And I replied and said I was not. He said, "You will get off this bus."

I didn't know who he was. He didn't identify himself. All I know that he was just a white man who got up on the bus and said you are going to get off of the bus. And I asked him did he know what he was doing and he went on with a long story. "Yes, I know what I'm doing." He said "I'm doing what I was told to do by the director of the hospital."

And I explained to Mr. Durham that I had waited and waited for the bus and I had been out there a long time. And he interrupted me and said, "I don't care how long you have been waiting." He said, "And I don't care, this bus is not going to move, you are going to get off."

4

> That's when I looked around and I saw the bus was full with white males. And I looked around and he said, "You are going to get off." And I said, "No, I am not." He said that bus could sit there all day, I was going to get off of that bus.
>
> The men on the bus sniggled (sic) then, the white men on the bus just sniggled. And he proceeded to say that this bus wasn't bought for you all. And I asked him what he meant. He said no matter what it was, that you are going to get off of this bus. And as he continued to talk – I can't even remember all of the things that he said – but he was just so cruel and so degrading to me.
>
> And then a man in the back sniggled and said, "Uh oh, he's going to put her off." That's when Mr. Durham really go nasty with it. He said "We can sit here all day, you will get off this bus." I told him I was already seated on this bus and I had been waiting a long time. He said he didn't care how long I had been waiting. I had an appointment that I had to go to. That's why I was out there as early as I was. He said he didn't care.
>
> And I told him I was going to go to the director of the hospital. He said he didn't care who I went to. And he just proceeded to talk. I couldn't take it any more, because he was just going on and on and he just stood up over me, just as if I was nobody.
>
> And when I told him I was going to the director, as I got up to exist the bus, because I couldn't take any more of that, he said you could go tell anybody. If you want my name, you wait, I'll give you that too. I just kept walking and I walked straight to the director's office.

(Henderson depo., pp. 31-33).

There were two white male contractors who were on the shuttle bus who were not asked to give up their seats; however, Ms. Henderson could not describe them other than as white males who had been working in the hospital ceiling perhaps wiring. (Henderson, pp, 41-48.) Ms. Henderson did not inform Durham that the contractors were on the bus. (Henderson depo, p. 46.) Durham states in his declaration that he recognized Marty Naugher, a VA employee, and saw a woman wearing a lab coat and VA name tag who was later identified to him as Ms. Henderson but that he did not see any other VA employees and no VA contractor workers on the shuttle bus.

5

Durham did not specifically address the contractors on board and demand that they give up their seats. (Henderson depo, p. 92.) Ms. Henderson believed she was singled out because of her race because "everybody else that was on that bus could have been asked to get off, but they were white." (Henderson depo, p.84.)

When Ms. Henderson left the bus, she went directly to the office of Y.C. Parris, the director for the VA, to complain about the incident. (Henderson depo., pp.55-61). He comforted her and "told me not to worry, that he would take care of what had happened." (Henderson depo., pp.55-56). Mr. Parris also told Ms. Henderson that he didn't tell anybody to put anybody off of the bus." (Henderson depo, p. 61.)

On another occasion, Marty Browne, a non-African American VA employee, was asked by the black male bus driver to give her seat to a VA patient who was waiting at the curb to be transported. (Cloninger declaration.)

Since July 1998, Ms. Henderson has seen a counselor once a week "for counseling for the incident, the trauma of the bus incident from July 9th." (Henderson depo, p. 64.) She also developed a rash which permanently scarred her body as a result of the stress of the incident and used a lot or all of her sick leave (Henderson depo, p. 86-87) and at least 171 hours of annual leave. (Henderson depo. p. 87.) For several months, Ms. Henderson experienced periods of sleeplessness where she cried a great deal and even now cries "when I remember." (Henderson depo, pp. 77, 79.)

## I. Racially Hostile Work Environment Claim

Ms. Henderson alleges that Durham's conduct in directing that she get off of the shuttle bus created a racially hostile work environment. In order establish a hostile work environment claim, a plaintiff must prove that "the workplace is permeated with discriminatory intimidation, ridicule,

and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). To succeed on a racially hostile work environment claim, a plaintiff must also show: (1) that she is a member of a protected group; (2) that she was subject to unwelcome harassment; (3) that the harassment was based on race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. See *Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986); *Mendoza v. Borden, Inc.*, 158 F.3d 1171-75 (11th Cir. 1998); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

West argues that Ms. Henderson cannot show that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. Whether the conduct is sufficiently severe or pervasive contains both objective and subjective components: a reasonable person would have to be able to find the environment to be hostile AND the victim would have to perceive the environment to be hostile. *Harris*, 510 U.S. at 21-22.

While Ms. Henderson obviously felt that the shuttle bus incident was racially motivated and severe, thereby satisfying the subjective component, she has a more difficult task satisfying the objective component. In *Mendoza*, 195 F.3d at 1246, the Eleventh Circuit Court of Appeals reiterated the standard to be employed in looking at the objective component:

> [T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "'all the circumstances.'" *Oncale*, 118 S.Ct. at 1003 (quoting *Harris*, 510 U.S. at 23).

7

In determining whether an environment is hostile, the court should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

This was an isolated incident. Despite Ms. Henderson's analogy to Rosa Parks, the incident was not severe given the absence of any evidence of the use of racial slurs or epithets. Further, the incident was not physically threatening.

While Ms. Henderson found the incident to be humiliating, this interpretation was not objectively reasonable. Durham directed that VA employees in general get off the shuttle bus to accommodate two patients who needed seats. A white male employee relinquished his seat and got off the bus. When Ms. Henderson remained seated, Durham focused on her when he directed her to get off the bus because she was wearing a lab coat and name tag that clearly identified her as an employee. Although Ms. Henderson alleges that 2 white male contractors remained on the shuttle bus, there was no evidence submitted that Durham was aware of the contractors' presence or that the contractors had any clothing or badges that identified them as contractors.

There was no offensive utterance. The direction to get off of the bus did not unreasonably interfere with Ms. Henderson's work performance since her work day had ended. Despite the emotional and physical symptoms suffered by Ms. Henderson subsequent to this single incident which she attributes to the incident, the fact that she was uniquely sensitive to the request for her to relinquish her seat is insufficient for the court to conclude that this single incident constituted a hostile work environment.

Although Durham was apparently ill informed of the VA policy of not requiring employees who were already seated to relinquish their seats to patients, at least one black bus driver asked another VA employee who was not African American to relinquish her seat to a patient. In light of all of the circumstances, the court concludes that Durham's direction to Ms. Henderson on one occasion to disembark from the shuttle bus did not rise to the level of creating a hostile work environment.

West is entitled to summary judgment on this claim.

## II. Title II violation

Title II, 42 U.S.C. section 2000a provides:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodation of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

West argues that the Title II claim must fail because Ms. Henderson has failed to show a waiver of sovereign immunity. Ms. Henderson argues that because there is a provision for the awarding of attorneys' fees against the United States, 42 U.S.C. § 2000a-3(b), this is a waiver of sovereign immunity. Ms. Henderson further argues that public accommodations include operations that are "supported by State action," 42 U.S.C. § 2000a(b), such as the VA shuttle bus. Even assuming, without deciding, that the United States has waived sovereign immunity, Ms. Henderson cannot show a prima facie Title II violation.[2]

---

[2] The court has been unable to locate any precedent addressing whether the United States has waived sovereign immunity in the context of Title II, Civil Rights Act. However, for the reasons discussed below, the magistrate judgment concludes that defendants are entitled to summary judgment on this claim

9

To establish a *prima facie* case of discrimination under Title II, "plaintiff must demonstrate: 1.) that she is a member of a protected class; 2.) that defendant intended to discriminate against her on that basis; and 3.) that defendant's racially discriminatory conduct abridged a right enumerated in the statute." *Stevens v. Steak n Shake, Inc.*, 35 F. Supp. 2d 882, 887 (M.D. Fla. 1998). Defendant argues that Ms. Henderson has failed to state a claim under Title II because "the Plaintiff clearly was asked to leave the shuttle on the basis of her status as an employee of the VA and not on the basis of her race." (Document #25, p. 13).

There were no racial overtones to the exchange between Durham and Ms. Henderson. While Ms. Henderson was the only black woman on a bus full of mostly white men[3] thus raising the specter of Rosa Parks, the fact remains that there is no evidence that Ms. Henderson was asked to get off the bus because she was black. Rather, all evidence indicates that she was told to get off the bus because she was a VA employee and patients were attempting to get on the full bus.

Moreover, the magistrate judge notes that under Title II, the only relief available is injunctive. See, *Arguello v. Conoco, Inc.*, 207 F.3d 803, 809, n. 9 (5th Cir. 2000); *Laroche v. Denny's Inc.*, 62 F. Supp. 2d 1366, 1374, n. 6 (S.D. Fla. 1999). In order to obtain injunctive relief, Ms. Henderson must show "a real or immediate threat that [she] will be wronged again – a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). It is extremely doubtful that Ms. Henderson could show that she is in danger of being wronged again. Durham is no longer a VA employee. Further, the policy of the VA

---

[3] Most of the men on the bus were apparently patients. Plaintiff vaguely identified only two men as VA contractors and none as VA employees other than Naugher who disembarked ahead of Ms. Henderson when directed VA employees to get off the shuttle bus.

hospital is that employees are NOT required to relinquish their seats to patients once they are seated. Hopefully, the policy was explained carefully to Durham's replacement.

Based on the foregoing, West's motion for summary judgment (document #24) is due to be granted. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

DONE this the 17th day of September, 2002.

PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE